NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DWAINE HINES,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>VULCAN TOOLS COMPANY,<br><br>　　　　　　Defendant. | Civil Action No.: 16-9474 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendant Vulcan Tools Company's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1. (ECF No. 41). Plaintiff Dwaine Hines filed opposition and Defendant replied thereto. (ECF Nos. 44, 50). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons expressed below, the Court grants Defendant's Motion.

I. **BACKGROUND**[1]

Defendant is a manufacturing company for machine components located in New Jersey and owned by Anton Heldmann and his son, Richard Heldmann. (Def.'s SMF ¶¶ 9–10). In or around July 2011, Plaintiff interviewed with Anton Heldmann for a machinist position and received an offer on the spot. (Def.'s SMF ¶¶ 18–19). Plaintiff accepted the offer and began his employment for Defendant that month at an hourly rate of $17 per hour. (Def.'s SMF ¶¶ 19, 21). It is uncontested that Defendant employed "a diverse workforce," including but not limited to other African American employees besides Plaintiff. (Def.'s SMF ¶¶ 11–12). One such example is Fabian Foster, who is African American and works for Defendant as a manager. (Def.'s SMF ¶ 13).

Shortly before December 2015, Plaintiff had been earning $17.75 per hour and requested a raise, but Defendant denied said request. (Def.'s SMF ¶¶ 23, 32). In or around December 2015, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("the EEOC"). (Def.'s SMF ¶ 1). In filing said charge with the EEOC, Defendant checked the box indicating that the basis of his allegations was national origin-based discrimination and added the word "compensation," but Plaintiff did not check the box indicating race-based discrimination. (*Id.*; Pl.'s SMF ¶ 1).

---

[1] This background is taken from the parties' statements of material facts, pursuant to Local Civil Rule 56.1. (ECF No. 41-1, Defendant's Rule 56.1 Statement of Material Facts ("Def.'s SMF"); ECF No. 45, Plaintiff's Rule 56.1 Statement of Material Facts ("Pl.'s SMF"); ECF No. 50-3, Defendant's Response to Plaintiff's Statement of Material Facts). The Court notes that Plaintiff failed to file a responsive statement to Defendant's Statement of Material Facts, and instead filed his own Statement of Material Facts that does not specifically admit or deny each of Defendant's factual statements. Though this does not conform with Local Civil Rule 56.1, the Court finds that Plaintiff's error is not material to the determination of this motion, as Plaintiff's Statement almost identically mirrors Defendant's Statement. Therefore, the Court can glean from the parties' submissions the extent to which Plaintiff opposes Defendant's allegations and, if appropriate, may deem Defendant's allegations admitted to the extent that Plaintiff did not address them. *See Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (analyzing the substantially similar Local Civil Rule 56.1 of the Middle District of Pennsylvania and concluding that the District Court is best suited "to determine the extent of a party's noncompliance with" its Local Civil Rule and the appropriate sanctions thereto). Accordingly, the Court shall cite only to "Def.'s SMF" and the relevant paragraph number to the extent that Plaintiff admits any material facts as stated by Defendant.

In December 2015, Defendant had its annual winter shutdown for the entire month. (Def.'s SMF ¶ 24). Pursuant to Defendant's company policy, employees who have worked for five years or more are eligible for three weeks of paid vacation. (Def.'s SMF ¶ 25). Several eligible employees used this vacation time during the winter shutdown. (*Id.*). However, Plaintiff had not accrued the requisite five years to be eligible for paid vacation during the winter shutdown in December 2015. (Def.'s SMF ¶ 26). Instead, Defendant allowed its non-eligible employees, including Plaintiff, to apply for unemployment benefits for the time they would be temporarily laid off in December 2015. (Def.'s SMF ¶ 27). Accordingly, Plaintiff applied for and obtained unemployment benefits during the December 2015 winter shutdown in the amount of $356 per week. (Def.'s SMF ¶ 29). The amount that Plaintiff made in weekly unemployment benefits during the December 2015 winter shutdown was supposedly "'close' to what he actually earned in net pay while working full-time for" Defendant. (Def.'s SMF ¶ 31).

In January 2016, after the December 2015 winter shutdown ended, Plaintiff returned to work for Defendant. (Def.'s SMF ¶ 33). It is undisputed that Plaintiff's performance declined upon his return in January 2016, and that he "might have been a little disgruntled" during that time. (Def.'s SMF ¶¶ 35–36; Pl.'s SMF ¶¶ 48–49 (Plaintiff stating same)). For example, on January 15, 2016, Plaintiff only produced twelve machine components in eight hours even though he was supposed to produce eighty. (Def.'s SMF ¶ 35). Another example of Plaintiff's underperformance occurred on January 18, 2016, when Plaintiff only produced four machine components over three hours despite being required to produce thirty. (*Id.*).

On January 19, 2016, an employee of Defendant, Atige Saby Miller, complained that Plaintiff was singing loudly and being disruptive. (Def.'s SMF ¶ 37). Though Plaintiff denies that he was being loud, Miller described Plaintiff's singing as "yelling" and intentionally disruptive.

3

(Def.'s SMF ¶¶ 37–38; Pl.'s SMF ¶ 54). Regardless of the facts concerning Miller's complaint, it is uncontested that Richard Heldmann approached Plaintiff to address his allegedly disruptive behavior and that, during the discussion, Plaintiff stated "that he would make more money being on unemployment." (Def.'s SMF ¶¶ 41–44; Pl.'s SMF ¶¶ 54–56 (Plaintiff admitting same)). Richard Heldmann subsequently called his father to discuss the situation. (Def.'s SMF ¶ 45). Anton Heldmann decided to terminate Plaintiff's employment, and Richard Heldmann conveyed that decision to Plaintiff. (Def.'s SMF ¶¶ 45–47). According to Defendant, Anton Heldmann's decision was based on several factors, including Plaintiff's declining performance, alleged disruptions, and "seeming lack of desire to work for" Defendant. (Def.'s SMF ¶ 46).

Plaintiff alleges that he was discriminated against by Defendant when he was temporarily laid off in December 2015 and when his employment was terminated in January 2016. (Pl.'s SMF ¶¶ 4–5; *see also* ECF No. 41-1 at 11 (construing Plaintiff's allegations to relate to both his temporary layoff in December 2015 and his termination in January 2016); ECF No. 44-1 at 14–15 (same)). To support his claims, Plaintiff alleges that Anton Heldmann "made comments about the superiority of non-American workers and the poor quality of American workers." (Pl.'s SMF ¶ 2). Plaintiff also alleges that white Eastern European employees were paid more than him and received preferential treatment, such as working over the December 2015 winter shutdown when Plaintiff was not permitted to. (*See* Pl.'s SMF ¶¶ 20, 41, 43, 45).[2] Defendant denies these claims. (ECF No. 50-3 ¶¶ 20, 41, 43, 45).

Accordingly, on December 23, 2016, Plaintiff brought this action against Defendant, asserting the following causes of action: (1) race-based discriminatory wrongful discharge in

---

[2] Plaintiff also draws attention to the fact that Miller referred to Plaintiff as "the Black Man" at some point in her deposition testimony. (Pl.'s SMF ¶ 7). This does not seem relevant to Plaintiff's discriminatory discharge claims, as it occurred years after Plaintiff's termination and, more importantly, Plaintiff concedes that the decision to terminate his employment was solely that of Anton Heldmann. (Pl.'s SMF ¶ 59).

violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") ("Count One"); (2) race-based discriminatory discharge in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5–1 *et seq.* ("NJLAD") ("Count Two"); (3) race-based discriminatory discharge in violation of 42 U.S.C. § 1981 ("§ 1981") ("Count Three"); and (4) violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution ("the Equal Protection Clause") ("Count Four"). (ECF No. 1 ("Compl.") ¶¶ 18–39). Defendant now moves for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists "no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[T]he moving party must show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

## III. ANALYSIS

### A. Failure to Exhaust Administrative Remedies

As an initial matter, Plaintiff voluntarily dismisses Count Four, as both parties correctly point out that a claim under the Equal Protection Clause can only be brought against a state actor, which Defendant is not. (ECF No. 41-1 at 16; ECF No. 44-1 at 20). Accordingly, Defendant's Motion is granted as to Count Four.

The Court shall also grant Defendant's Motion as to Plaintiff's remaining causes of action in part because Plaintiff failed to exhaust his administrative remedies as to the claims brought under Title VII and NJLAD. To bring claims for race-based discrimination under Title VII and/or NJLAD, said claims must "fall fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) (internal quotations and citations omitted); *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 95 (3d Cir. 1999) (applying this standard to NJLAD claim and stating that "[t]his result is suggested by the similarities between the procedural requirements of Title VII and NJLAD, and the work-sharing agreements between the two agencies, pursuant to which the [New Jersey Division on Civil Rights] deferred handling of the NJLAD claims to the EEOC."). In this case, Plaintiff filed an EEOC charge for national origin-based discrimination, not race-based discrimination. (Def.'s SMF ¶ 1). Therefore, Plaintiff's race-based discrimination claims under Title VII and NJLAD are barred as they do not sufficiently relate back to the national origin-based discrimination charge filed with the EEOC.[3] *Karipidis v. ACE Gaming LLC*, No. 09-3321, 2010 WL 2521209, at *5

---

[3] In his opposition brief, Plaintiff attempts to construe his claims as relating not only to race-based discrimination, but also to national origin-based discrimination. Specifically, Plaintiff claims that he was discriminated against because he is an American and that Eastern European workers allegedly received better treatment. (ECF No. 44-1 at 5). Even if the Court was to entertain this argument, it would nevertheless fail "because being 'American' does not fall within the definition of 'national origin,' which is determined by looking only to [a person's] ancestry." *English v. Misys Int'l Banking Sys., Inc.*, No. 05-2540, 2005 WL 1703199, at *5 (D.N.J. July 20, 2005) (citations omitted).

(D.N.J. June 9, 2010) ("Where an underlying administrative charge fails to allege claims asserted in a subsequently filed federal complaint, those claims are barred.") (citing *Webb v. City of Phila.*, 562 F.3d 256, 262–63 (3d Cir. 2009)).

**B. *McDonnell Douglas***

Even if the Court were to assume *arguendo* that Plaintiff's claims were sufficiently related to the EEOC investigation such that he was allowed to bring his current causes of action for race-based discrimination, said claims would nevertheless fail to meet the standard articulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973) ("the *McDonnell Douglas* test"). The *McDonnell Douglas* test applies to discrimination claims arising under Title VII, NJLAD, and § 1981. *See Davis v. City of Newark*, 285 F. App'x 899, 903 (3d Cir. 2008); *Chandler v. Univ. of Pa.*, 567 F. App'x 129, 130 (3d Cir. 2014) ("Claims brought under 42 U.S.C. § 1981 are generally evaluated according to the burden-shifting framework articulated in [the *McDonnell Douglas* test"].).

Pursuant to this test, a plaintiff bears the initial burden of establishing a *prima facie* case of unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff succeeds in establishing a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the plaintiff's termination. *Id.* If the defendant is able to articulate such a reason, the plaintiff must then show that the proffered reason was a pretext for a discriminatory decision in order to survive summary judgment. *Id.* at 804–05. A plaintiff seeking to avoid summary judgment at the pretext stage must offer sufficient evidence that would "allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons . . . was either a *post hoc* fabrication or otherwise did not actually motivate the employment action

(that is, the proffered reason is a pretext)." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (citations and emphasis omitted).

To establish a *prima facie* case of race discrimination (*i.e.*, discriminatory discharge) under Title VII, NJLAD, and/or § 1981, Plaintiff must allege: (1) that he is in a protected class; (2) that he is qualified for the position held; (3) that he suffered an adverse employment action; and (4) either that the employer sought similarly qualified persons who are not members of his protected class or that the circumstances surrounding the adverse employment action support an inference of discrimination. *See, e.g., Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (citations omitted); *Hatcher v. Family Dollar Store, Inc.*, No. 08-1444, 2010 WL 1257736, at *11 (D.N.J. Mar. 26, 2010) (citations omitted); *Embry v. Fleckenstein*, No. 95-5897, 1996 WL 672262, at *7 (E.D. Pa. Nov. 20, 1996) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 243–54 (1983)), *aff'd*, 149 F. 3d 1164 (3d Cir. 1998) (Table Decision); *Victor v. State*, 203 N.J. 383, 409 (2010). Here, Plaintiff has sufficiently alleged a *prima facie* claim for race-based discrimination because he: (1) is African American, which is a protected class; (2) was qualified to work for Defendant; and (3) was terminated under an inference of racial discrimination, which Plaintiff claims is shown by comparable white employees allegedly earning more money and receiving better treatment than Plaintiff, such as being able to work during the December 2015 winter shutdown. (*See* Pl.'s SMF ¶¶ 4–5, 20, 41, 43, 45).

It is equally clear to the Court that Defendant has proffered a legitimate business reason for Plaintiff's temporary layoff and actual termination. To the extent that Plaintiff's allegations are related to his temporary layoff in December 2015, Defendant claims that said layoff was done for Plaintiff's benefit so that he can collect unemployment during the winter shutdown, and that the temporary layoff and opportunity to collect unemployment applied equally to all employees

who were not eligible for vacation time. (ECF No. 41-1 at 11). Once Plaintiff returned to work in January 2016 following the December 2015 winter shutdown, his employment was terminated because, according to Defendant, Plaintiff failed to meet his responsibilities, was disruptive to other employees, and expressed an overall lack of interest in working for Defendant. (Def.'s SMF ¶ 46). Plaintiff even concedes: (1) that Defendant was entitled to terminate his employment if he failed to perform his responsibilities; (2) that "he might have been disgruntled" when he returned to work after the December 2015 winter shutdown; and (3) that he stated during his discussion with Richard Heldmann that he would make the same amount of money in unemployment benefits that he made while he was working for Defendant. (Pl.'s SMF ¶¶ 21, 48–49, 54–56; *see also* ECF No. 44-1 at 17 ("Plaintiff testified, and he is correct, that if his work was not satisfactory, he would be terminated.")).

As to the final part of the *McDonnell Douglas* test, upon reviewing the record taken as a whole, the Court finds that Plaintiff has not presented sufficient evidence to rebut Defendant's proffered legitimate non-discriminatory reason for Plaintiff's termination. Though Plaintiff relies on his own deposition testimony and affidavits to support his claims, he does not offer any evidence or specific facts to corroborate his accusations. For example, Plaintiff alleges that comparable white employees were paid more than him, but Plaintiff does not offer the names of any specific employees who were paid more or any specific amount that other employees were paid. (*See generally* Pl.'s SMF; ECF No. 44-1). Additionally, Plaintiff's allegation that white employees were allowed to work during the December 2015 winter shutdown is based on two vehicles that he saw parked outside of Defendant's facility in December 2015, but Plaintiff could not confirm that anyone was working because he did not go inside the facility. (ECF No. 41-7 at 222:11–24:8). Outside of these unsupported allegations and his termination, Plaintiff does not

point to any adverse conduct that Anton Heldmann took against Plaintiff. (*See generally* Pl.'s SMF; *see also* Def.'s SMF ¶ 5 (citing Plaintiff's Complaint, which states that the layoff was "*the only adverse employment action* that [Defendant] ha[d] taken again [Plaintiff] since 2011," *i.e.*, when he began working) (emphasis added)).

In summary, there is no evidence besides Plaintiff's own testimony which could support a finding that Plaintiff's termination was motivated by racial discrimination. Therefore, the Court finds that Counts One, Two, and Three lack the evidentiary support in the record to survive the summary judgment stage. *See Thomas v. Del. State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (stating that "unsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment"); *Joseph v. N.J. Transit Rail Operations, Inc.*, No. 12-1600, 2013 WL 5676690, at *12 (D.N.J. Oct. 17, 2013) (granting summary judgment in favor of the defendant after finding that "[n]othing in the record suggests that [the employer's] decision to terminate Plaintiff's employment was based on race."), *aff'd*, 586 F. App'x 890 (3d Cir. 2014). Accordingly, the Court shall grant Defendant's Motion as to all of Plaintiff's causes of action.

## IV. <u>CONCLUSION</u>

For the aforementioned reasons, the Court hereby grants Defendant's Motion and enters judgment in favor of Defendant and against Plaintiff. An appropriate Order follows this Opinion.

Dated: May 13th, 2019.

                                                      JOSE L. LINARES
                                                     Chief Judge, United States District Court